Connie ROGGE, Individually and as Heir of Richard Hollas Rogge, Richard Rogge, Individually and as Heir of Richard Hollas Rogge, and Richard Rogge as Administrator of the Estate of Richard Hollas Rogge, Appellants

v.

The CITY OF RICHMOND, Texas, Appellee

NO. 01-14-00866-CV

Court of Appeals of Texas, Houston (1st Dist.).

Opinion issued September 29, 2016

Rehearing Overruled January 10, 2017

L. James Krell, Ron S. Rainey, Tritico Rainey, PLLC, Houston, TX, for appellants.

William S. Helfand, Norman Ray Giles, Chamberlain, Hrdlicka, White, Williams & Aughtry, Houston, TX, for appellee.

Panel consists of Justices Keyes, Massengale, and Lloyd.

## OPINION

Michael Massengale, Justice

Appellants Richard and Connie Rogge sued the City of Richmond after their son committed suicide in a jail cell. The City filed a plea to the jurisdiction and a motion for summary judgment asserting governmental immunity. In response, the Rogges argued that immunity had been waived under the Texas Tort Claims Act. *See* Tex. Civ. Prac. & Rem. Code §§ 101.001–.109. The trial court granted the City's motion.

The Rogges' suit is classified as a premises-liability claim based on allegations that their son's death was caused by a defective metal grate covering an air vent on the ceiling of the jail cell. But no evidence suggests that the metal grating was inherently dangerous or hazardous in its intended use as a cover for the air vent. Moreover, no evidence suggests that the condition of the grate actually caused the Rogges' son to commit suicide. We conclude that statutory waiver of governmental immunity for death caused by a condition of real property did not apply to this case, and the court lacked subject-matter jurisdiction over the Rogges' claims. Accordingly, we affirm.

## Background

Richard Hollas Rogge was arrested for driving while intoxicated. He was taken to the City of Richmond police station, where he was placed in a holding cell while the

arresting officer completed the paperwork required to transfer him to the Fort Bend County jail. Video recordings from inside the holding cell showed Rogge lying on a bench, apparently napping for the majority of the time he spent there. It is undisputed that Rogge was left alone in the cell for approximately three hours while no officer physically checked on him. During that time, Rogge committed suicide by using his shirt to hang himself from a metal grate covering an air vent.

Rogge's parents (hereinafter, the Rogges) sued the City of Richmond and two of its police officers alleging civil rights violations under federal law and causes of action under the Texas Tort Claims Act. The defendants removed the case to federal court for prosecution of the civil rights claims. The federal district court entered a take-nothing judgment on those causes of action and remanded the remaining state-law claims to the district court of Fort Bend County.

In state court, the Rogges alleged negligence, wrongful-death, and survival claims. They contended that their son's death was caused by the use or condition of property—the metal grate—which was "affixed into the ceiling and position[ed] directly above a toilet located in the holding cell." They alleged that the metal grate presented an unreasonable risk of harm because it was easily accessible to a person who wanted to harm himself. In the alternative, they pleaded that the positioning of the vent above the toilet was a premises defect.

The City filed a plea to the jurisdiction and motion for summary judgment, asserting that all of the Rogges' claims were barred by governmental immunity. The City argued that the suicide was not caused by a condition or use of tangible property, *see* TEX. CIV. PRAC. & REM. CODE § 101.021(2), and that the claims were barred by the discretionary-function exception to the limited waiver of immunity found in the Tort Claims Act, *see id.* § 101.056.

The Rogges amended their petition, and they responded to the jurisdictional challenge with evidence, including a preliminary report and deposition excerpts from an architect with expertise in the design and construction of jails and holding cells. In addition, the Rogges argued that the discretionary-function exception to the Tort Claims Act's limited waiver of immunity was irrelevant because they alleged a premises defect based on the size of the holes in the metal grate and its lack of mesh backing, as opposed to a claimed defect in the design of the holding cell itself.

The trial court granted summary judgment in favor of the City, and the Rogges appealed.

### Analysis

The Rogges challenge the dismissal of their lawsuit in four issues, arguing that (1) their son's death was caused by the City's use of tangible personal property, (2) his death was caused by a condition of tangible personal property, (3) the discretionary-function exception to the waiver of immunity did not apply, and (4) their cause of action for a premises defect was not addressed by the motion for summary judgment.

■■■ Governmental immunity from suit defeats a trial court's subject-matter jurisdiction, and it may be asserted in a plea to the jurisdiction or a motion for summary judgment. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex.2004); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Whether a trial court has subject-matter jurisdiction is a question of law,

which we review de novo. *See Miranda,* 133 S.W.3d at 226.

A plaintiff must allege facts that affirmatively establish the trial court's subject-matter jurisdiction. *State v. Holland,* 221 S.W.3d 639, 642 (Tex.2007). In determining whether the plaintiff has satisfied this burden, we construe the pleadings liberally in the plaintiff's favor and deny the plea if facts affirmatively demonstrating jurisdiction have been alleged. *Id.* at 643; *Miranda,* 133 S.W.3d at 227.

When a defendant challenges the sufficiency of jurisdictional facts, the trial court must consider relevant evidence submitted by the parties. *City of Waco v. Kirwan,* 298 S.W.3d 618, 622 (Tex.2009); *Miranda,* 133 S.W.3d at 227. In doing so, the court will "take as true all evidence favorable to the nonmovant" and "indulge reasonable inferences and resolve doubts in her favor." *Miranda,* 133 S.W.3d at 228. When the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228. If, however, the evidence creates a fact question regarding jurisdiction, then the trial court must deny the plea, and the fact issue will be resolved by the factfinder. *Id.* at 227–28.

The doctrine of governmental immunity, like sovereign immunity from which it is derived, protects political subdivisions of the State from lawsuits unless the Legislature specifically has waived its immunity to suit. *See City of Houston v. Williams,* 353 S.W.3d 128, 134 (Tex.2011). The Tort Claims Act, which provides a limited waiver of immunity, applies equally to the State and its political subdivisions, including cities. *Mission Consol. Indep.*

*Sch. Dist. v. Garcia,* 253 S.W.3d 653, 655 (Tex.2008); *see* TEX. CIV. PRAC. & REM. CODE § 101.001(3). Among other categories of permitted claims, section 101.021 waives sovereign immunity in premises-defect cases, which represent a specific type of case arising from a condition of real property. *See, e.g., Cty. of Cameron v. Brown,* 80 S.W.3d 549, 554 (Tex.2002); *see also* TEX. CIV. PRAC. & REM. CODE §§ 101.021(2), 101.022(a). Immunity is waived for "personal injury and death" proximately caused "by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE § 101.021(2).

In the trial court, the Rogges pleaded alternative causes of action. First, they alleged that "a metal grate affixed into the ceiling" and positioned "directly above a toilet located in the holding cell" was a "condition of the premises" constituting a premises defect that "placed an unreasonable risk of harm ... as the grate was easily accessible by a person to cause or inflict harm to himself." They further alleged that the City had "actual knowledge of the premises defect," that it was "aware that such defect was a dangerous condition," and that the dangerous condition was created by the City "through the design and use of the premises." The Rogges contended that the City breached its duty to their son by creating "the dangerous condition," failing to warn about the condition, and failing to make it reasonably safe, proximately resulting in the suicide. The Rogges also alleged negligence "in supplying" tangible personal property, identified in the trial court and on appeal as the metal grate on the ceiling.[1] The grate was

---

1. In addition to the metal grate, the Rogges' first amended petition also alleged that the holding cell itself and the toilet were "inadequate" and "defective" items of tangible personal property that had been supplied to their son. They further alleged that the City failed

alleged to be "inadequate," "defective," and missing "necessary and integral" safety components.

The Rogges relied upon both the premises-liability and negligence theories of liability to support wrongful death and survival claims. On appeal, the Rogges base each of these claims on the "use" and "condition" of the metal grate, which they alleged was the cause of their son's suicide.

## I. Classification of cause of action

 To decide the jurisdictional issue presented by this appeal, we first must evaluate how to characterize the Rogges' cause of action. The Tort Claims Act imposes different standards of care upon a governmental unit for negligence claims based on "a condition or use of tangible personal property" and claims based on a "premises defect" relating to the condition or use of real property. *See Sampson v. Univ. of Tex. at Austin*, No. 14–0745, 500 S.W.3d 380, 384–85, 2016 WL 3212996, at *2 (Tex. June 10, 2016) (citing Tex. Civ. Prac. & Rem. Code §§ 101.021(2), 101.022(a)). A claim cannot be both a premises-defect claim and also a claim relating to a condition or use of tangible property. *See id.* at 385–86, 2016 WL 3212996, at *3 (citing *Miranda*, 133 S.W.3d at 233). "Whether a claim is based on a premises defect is a legal question." *Id.* 384–85, 2016 WL 3212996, at *2. A claim based on a condition or use of real property is a premises-defect claim under the Tort Claims Act. *Id.* at 385–86, 2016 WL 3212996, at *3 (citing *Miranda*, 133 S.W.3d at 230, and Tex. Civ. Prac. & Rem. Code §§ 101.021(2), 101.022).

 When "liability is predicated not upon the actions of the governmental unit's employees but by reference to the duty of care owed by the governmental unit to the claimant for premise and special defects as specified in section 101.022 of the ... Tort Claims Act," the claim is based on an allegation of premises defects. *DeWitt v. Harris Cty.*, 904 S.W.2d 650, 653 (Tex.1995); *see also Sampson*, 500 S.W.3d at 388, 2016 WL 3212996, at *4. "[N]egligent activity encompasses a malfeasance theory based on affirmative, contemporaneous conduct by the owner that caused the injury, while premises liability encompasses a nonfeasance theory based on the owner's failure to take measures to make the property safe." *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 776 (Tex. 2010). Thus, when distinguishing between a negligent activity and a premises defect, we must focus on "whether the injury occurred by or as a contemporaneous result of the activity itself—a negligent activity—or rather by a condition created by the activity—a premises defect." *Sampson*, 500 S.W.3d at 388, 2016 WL 3212996, at *4 (citing *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex.1992)). "The distinction lies in whether it is the actual use or condition of the tangible personal property itself that allegedly caused the injury, or whether it is a condition of real property—created by an item of tangible personal property—that allegedly caused the injury." *Id.*

 Within the Tort Claims Act's context, "condition" has been defined as "either an intentional or an inadvertent state of being." *Id.* (quoting *Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 49 (Tex.2015)). To state a "condition" claim under the Tort Claims Act, there must be an allegation of

---

to provide him proper attire. None of these allegations have been relied upon by the Rogges on appeal to support their argument that they have pleaded a proper cause of action based on the City's use of tangible personal property. Instead, their appellate arguments about waiver of immunity based on the alleged condition or use of tangible personal property are based solely on the alleged condition or use of the grate.

"defective or inadequate property." *Id.* Furthermore, "use" has been defined to mean "to put or bring into action or service; to employ for or apply to a given purpose." *Id.* (quoting *Tex. Dept. of Criminal Justice v. Miller*, 51 S.W.3d 583, 588 (Tex.2001)). "As with negligent activity claims under common law, to state a 'use' of tangible personal property claim under the Tort Claims Act, the injury must be contemporaneous with the use of the tangible personal property—'[u]sing that property must have actually caused the injury.'" *Id.* (quoting *Miller*, 51 S.W.3d at 588).

■ A governmental unit "does not 'use' tangible personal property . . . within the meaning of section 101.021(2) by merely providing, furnishing, or allowing . . . access to it." *Id.* (quoting *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 98 (Tex.2012)). "However, non-use and furnishing access are distinguishable from situations in which a governmental unit 'provided equipment that lacked an integral safety component.'" *Id.* (citing *Tex. A & M Univ. v. Bishop*, 156 S.W.3d 580, 584 (Tex.2005)).

■ Our determination turns on whether the contemporaneous "action or service" (use) or "state of being" (condition) of the tangible personal property itself caused the injury, or whether the tangible personal property created a dangerous real-property condition, making it a premises defect. *See id.* "Just as at common law, where an activity may create a condition of the premises, under the Tort Claims Act an item of tangible personal property may create a condition of the premises, resulting in a premises defect claim." *Id.* (citing *Keetch*, 845 S.W.2d at 264).

■ The Rogges rely on *Retzlaff v. Texas Department of Criminal Justice*, 135 S.W.3d 731 (Tex.App.–Houston [1st Dist.] 2003, no pet.), a case in which a prisoner fell into a razor-wire fence constructed on the perimeter of a prison recreation yard. This court held that the prison's placement of the razor wire was a use of tangible personal property, and immunity had been waived by the Tort Claims Act as to a negligence claim. *Retzlaff*, 135 S.W.3d at 741. The Rogges argue that the City in this case similarly "used" the grate by installing it in the holding cell for the purpose of preventing "a prisoner's escape through the ventilation." We find no factual support for this argument. The testimony in the appellate record addressed the need for suitably-sized holes to permit the passage of air, industry recommendations regarding identification of individuals at-risk for suicide, and methods for continuous observation of at-risk people. But the deposition excerpts relied upon by the Rogges do not include testimony that the purpose of the metal grate was to prevent a prisoner's escape. Thus, the jurisdictional evidence does not support the comparison to *Retzlaff* and the suggestion that the suicide resulted from the use of the grate to prevent escape.

The Rogges also urge us to follow a precedent of the Corpus Christi Court of Appeals in *Martinez v. City of Brownsville*, No. 13–00–425–CV, 2001 WL 1002399 (Tex.App.–Corpus Christi Aug. 31, 2001, pet. denied) (mem. op.; not designated for publication). In *Martinez*, an inmate committed suicide by hanging himself with a shirt tied to the bars on his prison cell door. *Martinez*, 2001 WL 1002399, at *2. The court of appeals rejected the argument that the decedent's use of tangible personal property was insufficient to satisfy the statute because the governmental entity had to use the property to waive immunity. *Id.* at *6–7. The court held that the City used the cell improperly by failing to provide the decedent with garments that could not have been used to commit

suicide. *Id.* at *7. We acknowledge the factual similarity between *Martinez* and this case. In both cases, the inmates used clothing and city-owned property to commit suicide. However, we decline to follow *Martinez*, which is inconsistent with subsequently decided Supreme Court authority that clarified that a governmental unit does not use "property merely by allowing someone else to use it and nothing more." *San Antonio State Hosp. v. Cowan*, 128 S.W.3d 244, 246 (Tex.2004) (no waiver of immunity when suicidal hospital patient committed suicide with suspenders and walker); *see also Dallas Cty. v. Posey*, 290 S.W.3d 869, 871–72 (Tex.2009) (per curiam) (no waiver of immunity when inmate committed suicide with a telephone cord).

We conclude that the Rogges' claim is properly classified as a premises-defect claim, and not one based on the use of tangible personal property. This is not a case in which liability is predicated upon any "affirmative, contemporaneous conduct" by the City's employees, *Del Lago Partners*, 307 S.W.3d at 776, but instead depends upon the duty of care owed by the City to people held in the police station's holding cell. *See DeWitt*, 904 S.W.2d at 653; *Sampson*, 500 S.W.3d at 385–86, 2016 WL 3212996, at *4. Accordingly, we overrule the Rogges' first issue, which is based on the specific theory that "the death of Richard Hollis Rogge was caused by the City's use of tangible personal property."

We also overrule their fourth issue, which is similarly premised on the incorrect assumption that the petition embodied distinct claims based on the City's alleged use of tangible personal property and also based on an alleged premises defect. The claim was based on an alleged premises defect, not use of tangible personal property, *see Sampson*, 500 S.W.3d at 386–89,

2016 WL 3212996, at *3, and the City's motion for summary judgment and plea to the jurisdiction properly presented the immunity defense that Rogge's death was not caused by a defective condition of tangible property.

## II. Premises-liability claim based on condition of tangible personal property

▮ In their second issue, the Rogges argue that the trial court erred by dismissing their case because immunity was waived due to the condition of the metal grate, which they contend caused their son's death.

A condition of property may be a basis for waiver of governmental immunity when it makes the property inherently dangerous and "poses a hazard when the property is put to its intended and ordinary use." *Rusk State Hosp.*, 392 S.W.3d at 99. When waiver of immunity is premised on a condition of property, "there must be a nexus between the condition of the property and the injury." *Posey*, 290 S.W.3d at 872. "This nexus requires more than mere involvement of property; rather, the condition must actually have caused the injury." *Id.* (citing *Dallas Cty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 342–43 (Tex.1998)). Thus immunity may be waived when a plaintiff alleges that the governmental entity has provided him with property lacking an integral safety component and that the lack of such safety component caused his injuries. *Rusk State Hosp.*, 392 S.W.3d at 99; *Cowan*, 128 S.W.3d at 247.

On appeal, the Rogges contend that the metal grate's ventilation holes were "too large" and that an "integral safety component" was lacking.[2] They rely on excerpts

---

**2.** *See* Appellants' Br. at 24–28. Our dissenting colleague reformulates the Rogges' arguments

on appeal to emphasize the placement of the grate "directly over the toilet in the holding

from the architect's deposition and his report to support their claim that the ventilation holes in the metal grate were too large for use in a holding cell and that a mesh backing was required. They argue that the mesh backing was an integral safety component that the metal grate lacked.

The architect testified that contemporaneous industry recommendations promoted the use of smaller ventilation holes as an additional means to prevent suicide, along with the preferred methods of identifying at-risk individuals and closely monitoring them. He did not testify that the metal grate lacked an integral safety component. Contrary to the description in the Rogges' brief, the deposition excerpts in the appellate record also do not show the expert testifying "that tear away clothing and/or the lack of clothing should have been provided to Rogge as he was intoxicated, under the influence of antidepressants and a suicide risk." To the contrary, when asked if he would have "believed it appropriate for Mr. Rogge to have been detained in this cell with no clothes on," the architect declined to answer, saying he lacked sufficient information and explaining other

measures law enforcement officers can use to prevent inmate suicide—such as identification and monitoring of at-risk individuals.

There is no evidence in the appellate record that the metal grating was inherently dangerous or hazardous in its intended use as a cover for the air vent. None of the jurisdictional facts show that the condition of the grate actually caused the injury. *See Rusk State Hosp.*, 392 S.W.3d at 99; *Posey*, 290 S.W.3d at 872.

Our dissenting colleague suggests that the Rogges should be permitted an opportunity to replead and cure the jurisdictional defect. The pleadings already were amended in response to the jurisdictional challenge, and the Rogges have not suggested how they would amend their pleadings if given a second opportunity to do so. "For a defective condition to be the basis for complaint, the defect must pose a hazard in the intended and ordinary use of the property." *Posey*, 290 S.W.3d at 872. Even if the pleadings were amended to allege that the intended and ordinary use of the metal grate was to prevent an inmate from escaping through the air vent, the alleged-

---

cell" as a critical aspect of the challenged condition of tangible personal property in this case. In fact, while the placement of the toilet is discussed in the factual background section of the Rogges' brief to explain how the suicide occurred, the toilet is not referenced anywhere in the legal analysis. The placement of the grate over the toilet is particularly absent from the section of legal analysis arguing that the Rogges' injuries "were caused by the condition of tangible personal property." *See id.* Rather, in support of the argument that they pleaded facts sufficient to meet jurisdictional pleading requirements, the brief states simply: "The petition stated that Rogge was provided tangible personal property that was inadequate, defective and/or lacking an integral safety component, namely the grate in the holding cell that Rogge was placed in." *Id.* at 26. The Rogges' appellate argument did not rely on the design of the jail cell or the rela-

tive placement of the toilet as an allegedly defective aspect of a condition of tangible personal property. Nor did it rely upon any alleged deprivation of depression medication. We do not consider arguments that were not urged on appeal. *See, e.g., Bunton v. Bentley*, 153 S.W.3d 50, 53 (Tex.2004) ("ordinarily, an appellant waives any complaint about the trial court's judgment that is not raised in the court of appeals"). " 'The premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them.' " *Nat'l Aeronautics & Space Admin. v. Nelson*, 562 U.S. 134, 148 n.10, 131 S.Ct. 746, 757 n. 10, 178 L.Ed.2d 667 (2011) (Alito, J.) (quoting *Carducci v. Regan*, 714 F.2d 171, 177 (D.C.Cir.1983) (Scalia, J.)).

ly defective combination of the large holes and the lack of mesh backing would not have actually caused this injury. *See id.* Likewise, even if the Rogges challenged the placement of the toilet as a defective condition of real property, that would not establish that the toilet posed a hazard when put to its intended and ordinary use. *See id.* Even an allegation that the metal grate, the relative placement of the toilet, and the failure to provide tear-away clothing combined to create a premises defect would not adequately allege a nexus between a dangerous condition of real property and the cause for the tragic suicide that occurred in the jail cell. *See id.* In the absence of an argument suggesting how the pleadings might be cured, a remand would serve no purpose. *See Texas A & M Univ. Sys. v. Koseoglu,* 233 S.W.3d 835, 840 (Tex.2007).

We therefore hold that the City's immunity was not waived by a defective condition of real property, and we overrule the Rogges' second issue.[3]

### Conclusion

We affirm the judgment of the trial court.

Justice Keyes, dissenting.

Evelyn V. Keyes, Justice, dissenting.

I respectfully dissent. Appellants Richard and Connie Rogge sued the City of Richmond after their son committed suicide in a jail holding cell by using his clothes to hang himself from a grate with large holes and no safety screen that was placed directly over the toilet. The City filed a plea to the jurisdiction and motion for summary judgment asserting governmental immunity. The Rogges argued that the City's immunity was waived under the Texas Tort Claims Act because they had asserted a claim that their son's injuries were proximately caused either by the use and/or condition of tangible property or by a premises defect and the Tort Claims Act waives the City's immunity for both. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.001–.109 (West 2011 & Supp. 2016). The trial court granted the City's plea to the jurisdiction.

The majority states that the Rogges pled "a premises-liability claim based on allegations that their son's death was caused by a defective metal grate covering an air vent on the ceiling of the jail cell." Op. at 572. It then concludes that the Tort Claims Act does not waive immunity in this case because "[t]here is no evidence in the appellate record that the metal grating was inherently dangerous or hazardous in its intended use as a cover for the air vent" and the jurisdictional facts did not "show that the [defective] condition of the grate actually caused the injury." It therefore holds that the court lacked subject-matter jurisdiction over the Rogges' claims and affirms the trial court's order dismissing them.

The claim the majority dismisses on this plea to the jurisdiction is, however, the *majority's* claim, *repled by the majority* on behalf of the Rogges to state a claim for a defective grate that the Rogges did not make and cannot reasonably be construed as having made. And the lack of jurisdictional evidence cited by the majority—the lack of evidence to support the claim of a defective vent—is only relevant to the

---

**3.** Based on our conclusion that governmental immunity has not been waived pursuant to the Tort Claims Act, TEX. CIV. PRAC. & REM. CODE § 101.021(2), it is unnecessary for us to address the Rogges' third issue, which challenged the application of the statutory discretionary-function exception to waiver of immunity, *id.* § 101.056, argued by the City in the trial court. *See* TEX. R. APP. P. 47.1.

claim made by the *majority*, not the Rogges, and is irrelevant to the Rogges' claim. The Rogges are entitled to have this plea to the jurisdiction decided on the question of whether the City's immunity under the Tort Claims Act was waived by the Rogges' *own* claim as supported by their jurisdictional evidence. And this Court is bound to view the pleadings and evidence in the light most favorable to the judgment below and to allow repleading if they are factually insufficient. This case should not be dismissed on putatively insufficient pleadings manufactured for the plaintiffs by the appellate Court.

I would hold that the Rogges have properly pled a premises defect claim against the City, that they have properly supported every element of their claim with jurisdictional evidence sufficient to take to a jury, and that, therefore, the City's immunity from suit is waived by the Tort Claims Act. I would reverse the trial court's order and remand the case for trial on the merits. And even if I were to conclude that the Rogges failed to plead a sufficient waiver under the Tort Claims Act, I would have remanded the case to the trial court for repleading. I would not dismiss the case for insufficient pleading of jurisdictional facts without giving the Rogges the chance to replead, in clear contravention of established authority.

### Plea to the Jurisdiction

When a defendant challenges the existence of jurisdictional facts, the trial court must consider relevant evidence submitted by the parties. *City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex.2009); *see Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex.2004). "[I]n a case in which the jurisdictional challenge implicates the merits of the plaintiffs' cause of action and the plea to the jurisdiction includes evidence, the trial court reviews the

relevant evidence to determine if a fact issue exists." *Miranda*, 133 S.W.3d at 227. "When reviewing a plea to the jurisdiction in which the pleading requirement has been met and evidence has been submitted to support the plea that implicates the merits of the case, we take as true all evidence favorable to the nonmovant" and will "indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Id.* at 228.

When the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* If, however, the evidence creates a fact question regarding jurisdiction, then "the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder." *Id.* at 227–28. Or, "[i]f the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be awarded the opportunity to amend." *Id.* at 226–27. Only if the pleadings affirmatively negate the existence of jurisdiction may a plea to the jurisdiction be granted without allowing the plaintiffs an opportunity to amend. *Id.* at 227.

### Premises Defect

In their second issue, the Rogges argue that the trial court erred by granting the City's plea to the jurisdiction on immunity grounds because the City's immunity from suit was waived due to the dangerous condition of the property, namely, the placement of the large-holed metal grate, directly over the toilet in the holding cell, which they contend was a proximate cause of their son's death. They point out that the Texas Tort Claims Act expressly waives a governmental entity's immunity

from suit for personal injuries proximately caused by a dangerous condition of the premises of which the entity was aware and did not take reasonable steps to make safe.

### A. Premises Defect as a Basis for Waiver of Governmental Immunity

"The [Texas Tort Claims Act] waives immunity for claims arising out of a condition of real property, in other words, a premises defect." *City of San Antonio v. Butler*, 131 S.W.3d 170, 179 (Tex.App.–San Antonio 2004, pet. denied) (citing *Cobb v. Tex. Dept. of Criminal Justice*, 965 S.W.2d 59, 62 (Tex.App.–Houston [1st Dist.] 1998, no pet.)); *see* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.021(2), 101.022 (West 2011). To make a claim based on a condition of real property in order to waive governmental immunity under the Act, "a plaintiff must complain of something defective or inadequate about the property itself." *Butler*, 131 S.W.3d at 179.

Under the Act, "a governmental unit is liable for 'personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.'" *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 97 (Tex.2012) (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 101.021 (2)); *Cty. of Cameron v. Brown*, 80 S.W.3d 549, 554 (Tex.2002); *City of Grapevine v. Roberts*, 946 S.W.2d 841, 843 (Tex.1997). The Act thus limits the duty owed by a governmental entity to a claimant to "the duty that a private person owes to a licensee on private property." *Brown*, 80 S.W.3d at 554 (quoting TEX. CIV. PRAC. & REM. CODE § 101.022 (a)); *City of Grapevine*, 946 S.W.2d at 843. A licensee asserting a premises defect claim must show "that the defendant possessed—that is, owned, occupied, or controlled—the premises where the injury occurred." *Brown*, 80 S.W.3d at

554. A possessor of property "must not injure a licensee by willful, wanton, or grossly negligent conduct, and must use ordinary care either to warn a licensee of a condition that presents an unreasonable risk of harm of which the possessor is actually aware and the licensee is not, or to make the condition reasonably safe." *Id.* (citing *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex.1992)). "An exception to the general rule is that if the landowner has knowledge of a dangerous condition and the licensee does not, the landowner has a duty either to warn the licensee or to make the condition reasonably safe." *City of Grapevine*, 946 S.W.2d at 843.

"[I]mmunity is waived only if the condition (1) poses a hazard in the intended and ordinary use of the property and (2) actually causes an injury or death." *Rusk State Hosp.*, 392 S.W.3d at 98. In this context, courts must determine whether the condition of the property proximately caused the alleged injury. *See City of Dallas v. Sanchez*, 494 S.W.3d 722, 726, No. 15–0094, 2016 WL 3568055, at *3 (Tex. July 1, 2016). "Proximate cause requires both cause in fact and foreseeability," meaning that the condition must "serve[ ] as 'a substantial factor in causing the injury and without which the injury would not have occurred.'" *Id.* (quoting *Ryder Integrated Logistics, Inc. v. Fayette Cty.*, 453 S.W.3d 922, 929 (Tex.2015) and *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 774 (Tex.2010)). "To be a substantial factor, the condition or use of the property 'must actually have caused the injury.'" *Id.* (citing *Dallas Cty. v. Posey*, 290 S.W.3d 869, 872 (Tex.2009) ("This nexus requires more than mere involvement of property; rather, the condition must actually have caused the injury.")). However, to be a proximate cause, a cause need not be the sole cause; it need only be a substantial factor without

which the injury would not have occurred. *See Del Lago Partners,* 307 S.W.3d at 774. An injury may have more than one proximate cause. *Id.*

Immunity is waived for "claims in which a plaintiff alleges that a state actor has provided property that lacks an integral safety component and that lack of this integral component led to the plaintiff's injuries." *Rusk State Hosp.,* 392 S.W.3d at 99 (quoting *Kerrville State Hosp. v. Clark,* 923 S.W.2d 582, 585 (Tex.1996)); *see San Antonio State Hosp. v. Cowan,* 128 S.W.3d 244, 247 (Tex.2004). This is so because the injury would not have happened but for the missing safety component even though the missing component did not by itself cause the injury.

A condition poses an unreasonable risk of harm for premises-defect purposes when there is a "sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen." *Brown,* 80 S.W.3d at 556. Foreseeability in this context "does not require that the exact sequence of events that produced an injury be foreseeable," but only that the general damage must be foreseeable. *Id.*

### B. The Rogges' Premises Defect Claim

Here, the Rogges contend that the positioning of the large-holed air vent directly above the toilet in the holding cell to which their intoxicated son was taken after being deprived of his medication for depression was a hazard when the holding cell was used for its intended purpose. They assert that the air vent was covered by a grate with holes large enough to insert an object—such as the clothing the Rogges' son used to hang himself—and it lacked a safety mesh barrier. The Rogges contend this air vent constituted a hazard for the ordinary use of the holding cell to hold prisoners at high risk of suicide; that the suicide of an inebriated prisoner held in the cell

without anti-depressant medication was a foreseeable risk of the City's placing the toilet directly beneath the vent; that the City knew of the hazard; and that it nevertheless took that risk by placing the Rogges' son in that cell without his medication and by failing to make the premises reasonably safe by either placing a wire mesh behind the grate to prevent the insertion of objects or even conducting continual surveillance of the cell. The Rogges also introduced jurisdictional evidence to support each of the elements of this claim.

Specifically, the Rogges pled as follows:

33. *Inside of the holding cell on Defendant CITY OF RICHMOND's property was a metal grate affixed into the ceiling and position [sic] directly above a toilet located in the holding cell. This condition of the premises was a premises defect and placed an unreasonable risk of harm to ROGGE as the grate was easily accessible by a person to cause or inflict harm to himself as in the present case* where ROGGE was able to hang himself and ultimately take his own life by the condition of the premises.

34. Furthermore, *Defendant CITY OF RICHMOND had actual knowledge of the premises defect and further Defendant was aware that such defect was a dangerous condition. Moreover, the dangerous condition was created by Defendant CITY OF RICHMOND through the design and use of the premises.*

35. Defendant CITY OF RICHMOND *breached its duties of ordinary care by creating the dangerous condition, failing to warn ROGGE of the condition and failing to make the condition reasonably safe.* Defendant's breach of those duties proximately caused the Plaintiff's injuries. Defendant's actions

were not only negligent, but *grossly negligent.*

(Emphasis added).

Thus, the Rogges claimed that positioning a vent directly over the toilet without any safety mesh and with holes large enough to insert the clothing their son used to hang himself was an inherently dangerous condition of the City's holding cell that the City created and of which it was aware. In support of this claim, the Rogges introduced the expert testimony of Wayne Gondeck, an architect with over thirty years of experience in the design and construction of jails and holding cells. Gondeck testified that the air vent with large holes and lacking a mesh backing placed directly over the toilet in the holding cell was a proximate cause of the Rogges' son's injuries. He testified that properly constructed cells use a vent with much smaller holes into which objects cannot be introduced—vents similar to the one the City placed in this holding cell after the Rogges' son's suicide. And he testified that contemporaneous industry recommendations recommended the use of smaller ventilation holes as an additional means to prevent suicide along with the preferred methods of identifying at-risk individuals and closely monitoring them.

After establishing his expert credentials as a jail architect and the facts and data upon which he relied, Gondeck opined in his affidavit:

> While *the air register was the primary fixture used in facilitating the suicide by hanging,* the CELL arrangement and, in particular, the full-height privacy partition provides a hiding space that allowed the suicide act to be carried out in hiding or isolation. *The location of the air register directly above the toilet/lavatory plumbing fixture made the air register readily accessible to prisoners.* If a lower-height privacy screen had

been used in the CELL then an act of suicide by hanging from the air register could only occur in view of the observation window located in the CELL door. The observation window in the CELL door provides the only view for staff from outside of the CELL. A continuously staffed post is not provided that has direct view into the observation window in the CELL door.

I have *concluded the following characteristics of the CELL were not properly planned or provided to house prisoners, specifically those who are intoxicated or have suicidal tendencies:*

> 1. CELL location is not situated to be constantly viewed from a continuously staffed post.
>
> 2. Full-height privacy partition at the toilet area creates a hiding space, away from view of staff.
>
> 3. *Lattice type security air register located in ceiling, directly above the toilet/lavatory plumbing fixture, out of direct view of staff, provides a readily accessible tie-off point in the hiding space.*
>
> 4. *These physical characteristics of the CELL are known to cause or contribute to prisoner injury. A possible act of the nature in this matter was foreseeable in the planning and building of the CELL. It is my opinion that the planning and building of the CELL fell below the standard of care because the CELL was not suitably located, arranged, nor equipped for housing prisoners,* based on generally accepted or best practices, customarily used in the planning or building of a jail or holding facility at the time the FACILITY was planned and built.

(Emphasis added).

I would hold that the Rogges have properly pled a cause of action for premises

defect against the City, that they have properly supported the challenged jurisdictional facts with expert testimony that supports jurisdiction in the trial court over the Rogges' claims under Tort Claims Act sections 101.021(1) and 101.022(a), and that, therefore, dismissal of their claim for failure to plead and prove jurisdictional facts sufficient to waive the City's immunity from suit under the Tort Claims Act was improper. *See Miranda*, 133 S.W.3d at 225–26. I would, therefore, reverse the trial court's order of dismissal.

The majority, however, repleads the Rogges' claim for them. It claims the Rogges pled that the vent was defective *in itself* when used *as a cover for an air vent.* This completely misrepresents the pleadings and the Rogges' expert testimony and causes the Rogges' pleadings not to state a claim for a premises defect. It then rejects the Rogges' cause of action on the pleadings for failing to adequately plead a premises defect claim against the City, and it rejects Gondeck's testimony as non-probative of the repled claim, stating:

On appeal, *the Rogges contend that the metal grate lacked an integral safety component.* They rely on excerpts from the architect's deposition and his report *to support their claim that the ventilation holes in the metal grate were too large for use in a holding cell* and that a mesh backing was required. *They argue that the mesh backing was an integral safety component that the metal grate lacked.*

*The architect* testified that contemporaneous industry recommendations promoted the use of smaller ventilation holes as an additional means to prevent suicide, along with the preferred methods of identifying at-risk individuals and closely monitoring them. He *did not testify that the metal grate lacked an integral safety component.*

. . . .

*There is no evidence in the appellate record that the metal grating was inherently dangerous or hazardous in its intended use as a cover for the air vent. None of the jurisdictional facts show that the grate actually caused the injury.*

Op. at 577–78 (emphasis added). This argument misrepresents both the Rogges' pleadings and the purpose of their jurisdictional evidence. The Rogges did not just plead that the vent "lacked an integral safety component" for use as an air vent. They pled that the vent lacked a safety component that could have made the premises safe and could thereby have remedied the hazard the City created by placing the toilet directly under a vent with large holes and which it knew to be a safety hazard and a premises defect. And their expert testified that "the air register was the primary fixture used in facilitating the suicide by hanging"; that "*the location of the air register directly above the toilet/lavatory plumbing fixture made the air register readily accessible to prisoners*"; that, because of this, and because of privacy walls in the cell that prevented the toilet area from being seen from the cell observation post, "the following characteristics of the CELL were not properly planned or provided to house prisoners, specifically those who are intoxicated or have suicidal tendencies: ... 3. *Lattice type security air register located in ceiling, directly above the toilet/lavatory plumbing fixture, out of direct view of staff,*" which provided "a readily accessible tie-off point in the hiding space," so that, this feature was a "physical characteristic[ ] of the CELL ... known to cause or contribute to prisoner injury," and thus, "[a] possible act of the nature in this matter was foreseeable."

There is simply nothing in the Rogges' pleadings to support the majority's claim that the Rogges pled that air vents without mesh backing are *in themselves* a safety hazard "when used as an air vent." And the majority mischaracterizes both the Rogges' pleadings and the jurisdictional evidence needed to support *their* claim—as opposed to its own claim—that there is "no evidence in the appellate record that the metal grating was inherently dangerous or hazardous in its intended use as a cover for the air vent." Op. at 578. Thus, instead of "tak[ing] as true all evidence favorable to the nonmovant" and "indulg[ing] every reasonable inference and resolv[ing] any doubts in the nonmovant's favor," as required by law, the majority does just the opposite. *Miranda*, 133 S.W.3d at 228. It claims the Rogges' cause of action for a premises defect was insufficiently pled, and it dismisses the cause of action without allowing the Rogges to replead the facts it claims should have been pled to demonstrate jurisdiction under the Tort Claims Act, in direct violation of *Miranda. See id.* at 226–27 ("If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend.").

In actuality, the Rogges pled—as required to plead a premises defect claim under Tort Claims Act sections 101.021(2) and 101.022(a)—that the City had a duty to keep the premises safe for the purposes of a holding cell and that it breached that duty by failing to use ordinary care to keep the premises safe, knowing that the wide-holed grate directly over the toilet in the cell created a dangerous condition for prisoners prone to suicide. And the Rogges also pled that the City violated this duty by installing a vent that lacked an integral safety component— mesh backing—directly over the toilet in the holding cell in which their son was held. *See Rusk State Hosp.*, 392 S.W.3d at 99; *Cowan*, 128 S.W.3d at 247; *Kerrville State Hosp.*, 923 S.W.2d at 585 (holding that immunity is waived for "claims in which a plaintiff alleges that a state actor has provided property that lacks an integral safety component and that lack of this integral component led to the plaintiff's injuries"). The Rogges thus specifically pled that the placement of the toilet directly below a vent with a grate with large holes in a holding cell built to house prisoners with suicidal tendencies—a danger of which the City had knowledge— was a defect in the property itself, and they supported their claims with expert testimony on every element of their claim.

I would hold that the Rogges' pleadings, which are supported by evidence of the jurisdictional facts, are clearly sufficient to support waiver of the City's immunity to their premises defect claim under the Tort Claims Act sections 101.021(2) and 101.022(a). But even if the evidence had merely *created a fact question* as to jurisdiction—such as, whether the placement of the toilet directly under the air vent with large holes and lacking the mesh backing that would have prevented the intrusion of objects created a hazard for the safety of prisoners with suicidal tendencies—then the trial court could not have properly granted the plea to the jurisdiction; instead, it should have denied the plea and left the facts to be resolved by the fact finder. *See Miranda*, 133 S.W.3d at 227– 28. And if the Rogges had pled only *insufficient* facts—such as *why* the air vent with large holes was a safety hazard—as the majority claims they did, they should have been allowed to replead. *Id.* at 226– 27. Only if their pleadings had "affirmatively *negate[d]* the existence of jurisdic-

tion" could the trial court—or this Court—have properly granted or affirmed the plea to the jurisdiction without allowing the Rogges the opportunity to replead. *Id.* at 227 (emphasis added). That was patently not the case here. Therefore, I cannot agree with the majority's disposition of this case on a plea to the jurisdiction.

I would decide this plea to the jurisdiction on the Rogges' claims and jurisdictional evidence—not my own or the majority's characterization of them. Taking the pleadings and jurisdictional evidence as true—as we must—I would conclude that the Rogges' pleadings and the jurisdictional evidence demonstrate that the placement of the toilet directly beneath a large-holed vent lacking a required safety mesh in the holding cell for prisoners at high risk of suicide created a hazard of which the City was aware and which it failed to use ordinary care to correct—such that the type and placement of the metal grate was dangerous and was "a substantial factor in causing the injury[, i.e., one] without which the injury would not have occurred." *Sanchez*, 494 S.W.3d at 726, 2016 WL 3568055, at *3; *Del Lago Partners*, 307 S.W.3d at 774; *see also Miranda*, 133 S.W.3d at 226–28 (stating standard of review of plea to jurisdiction in which evidence is adduced).

I would hold that the pleadings in this case fully satisfy the requirements for pleading a premises defect claim under the Tort Claims Act sections 101.021(2) and 101.022(a) under well-established authority. Therefore, the City's immunity to the Rogges' claims is waived by the Tort Claims Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.021(2), 101.022(a); *Rusk State Hosp.*, 392 S.W.3d at 97; *Brown*, 80 S.W.3d at 554. I would hold that the trial court erred in dismissing the Rogges' claims on governmental immunity grounds. *See Mi-*

*randa*, 133 S.W.3d at 226–28. I would deny the plea.

### Conclusion

I would reverse the judgment of the trial court and remand for trial on the merits.